IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRIS FORD, individually and in his capacity as assignee of the rights of Andreas Sekic, | ) CASE NO. 1:14 CV 2089 ) ) ) ) MAGISTRATE JUDGE |
| Plaintiff, | ) WILLIAM H. BAUGHMAN, JR. ) |
| v. | ) ) **MEMORANDUM OPINION AND** |
| STANDARD FIRE INSURANCE COMPANY, | ) **ORDER** ) ) |
| Defendant. | ) |

# Introduction

Before me by consent jurisdiction[1] in this diversity action[2] properly removed[3] from Cuyahoga County Court of Common Pleas[4] are cross-motions for summary judgment from the plaintiff, Chris Ford ("Ford"), as well as the defendant, Standard Fire Insurance Company ("Standard").[5] Both parties, in their respective motions, allege that there is no genuine issue

---

[1] ECF # 11.

[2] *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.").

[3] *See* 28 U.S.C. § 1441 ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending.").

[4] ECF # 1.

[5] ECF # 16; ECF # 17.

of material fact and that each is entitled to judgment as a matter of law.[6] For the reasons that follow, Standard's motion for summary judgment will be granted and Ford's motion denied.

**Legal Standard**

The court should grant summary judgment only if satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] The moving party bears the burden of showing the absence of any such "genuine issue:"

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[8]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[9] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[10] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[11]

---

[6] ECF # 16 at 1; ECF # 17 at 5.

[7] Fed. R. Civ. P. 56(a).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[9] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[10] *Id.* at 252.

[11] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The court should grant summary judgment if a party who bears the burden of proof at trial establishes each essential element of his or her case.[12] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[13]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.[14] The nonmoving party may not simply rely on its pleadings, rather, it must "produce evidence that results in a conflict of material fact to be solved by a jury."[15] Moreover, if the nonmovant presents evidence to the court that is "merely colorable" or not "significantly probative," the court may properly decide the legal issue and grant summary judgment.[16] "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[17]

In sum, proper summary judgment analysis entails the threshold inquiry of determining if there is a need for trial: Whether there are any "genuine factual issues that

---

[12] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex*, 477 U.S. at 322).

[13] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[14] *Id.* at 690.

[15] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[16] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[17] *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

properly can be resolved only by a finder of fact because they may reasonably resolved in favor of either party."[18]

### Material Factual Background

As a preliminary matter, I observe that jurisdiction over this matter is proper. The parties have diversity of citizenship, as Ford is a citizen of Ohio, Standard is both incorporated and has its principal place of business in the State of Connecticut, and the amount in controversy is $82,215.25.[19]

The conduct at the root of this dispute is not between Ford and Standard. It is actually between Ford and Andreas Sekic ("Sekic"), who, at the relevant time, had valid homeowners insurance policy with Standard.[20] That policy included a provision for personal liability.[21]

The relevant time was specifically the evening of November 17, 2009.[22] The relevant conduct was an altercation between Sekic and Ford, beginning at a Drug Mart and concluding violently at Ford's house.[23]

---

[18] *Anderson*, 477 U.S. at 250.

[19] ECF # 1 at 2.

[20] *Id.* at 2, 9.

[21] *Id.*

[22] ECF # 17-5, at 2-3.

[23] ECF # 16 at 2; ECF # 17-4, at 2.

Before getting into the details of that altercation, it bears mention that Ford and Sekic are not strangers. In fact, they are family, as Sekic is married to Ford's sister.[24] Far from exhibiting a model family dynamic, however, there is some bad blood between the two. Sekic previously alleged that Ford once stole Christmas presents intended for Sekic's children.[25]

**A.     Sekic's criminal conviction**

The November 17, 2009, altercation culminated in Sekic attacking Ford, striking him in the head with a ceramic pot, and causing Ford serious injury.[26] For this Sekic was criminally prosecuted.[27] A jury convicted him of felonious assault.[28] Sekic was sentenced to two years in prison.[29] The appeals court affirmed his conviction.[30]

---

[24] ECF # 17-5, at 1.

[25] *See id.*, at 2.

[26] ECF # 17-4, at 2.

[27] ECF # 17-5, at 4.

[28] *Id.*; Ohio Rev. Code § 2903.11(A) ("No person shall knowingly ... [c]ause serious physical harm to another ... [or cause] or attempt to cause physical harm to another ... by means of a deadly weapon or dangerous ordnance.").

[29] ECF # 17-4, at 2.

[30] ECF # 18 at 3; *State v. Sekic*, No. 95633, 2011 WL 3557029, *6 (Ohio Ct. App. Aug. 11, 2011). Sekic instigated the entire situation by confronting the Fords at their home while tensions were still high. Further, the jury heard all the testimony, observed the witnesses, and reviewed all the exhibits. Even if the jury disbelieved Kris [sic] Ford's version of the incident, the evidence still established beyond a reasonable doubt that Sekic knowingly caused serious physical harm to Kris [sic] Ford.

**B.     Ford's subsequent civil suit**

Ford sued Sekic for civil damages on November 1, 2010.[31] Standard's claims adjuster stated that although Sekic was served with the complaint on January 24, 2011, he did not promptly notify Standard about the pending action.[32] In fact, there is nothing in the record showing that Sekic *ever* notified Standard. Instead, Standard stated that it was notified of the litigation by Ford's attorney, although not until more than a year later on February 6, 2012, shortly before the trial.

On February 28, 2012, Standard notified Sekic in writing that it denied coverage for the incident.[33] In that letter, Standard stated that it was denying coverage because "[a]ssault is an intentional act for which [Sekic] was convicted and incarcerated" and that Ford's injuries were the result of "a violation of penal law."[34] Standard stated two reasons for denying coverage in its motion for summary judgment: Its personal liability coverage (1) only applies to *accidental* bodily injury, and (2) does not apply to bodily injury that was expected or intended.[35] Put more simply, Standard's position is that Sekic's policy coverage does not extend to his physical assault of Ford.

---

[31] ECF # 17-4, at 1.

[32] ECF # 17-2, at 2.

[33] ECF # 16-5, at 3.

[34] *Id.*

[35] ECF # 17 at 5.

Contrary to the findings of both the jury that convicted him and the affirming court of appeals, Sekic asserted during his deposition in the civil trial that he threw the pot out of self-defense; that he meant no harm; and that throwing the pot "was just an erratic, spur of the moment, defending myself kind of thing."[36]

The civil case was tried to a judge,[37] who on July 18, 2012, found against Sekic in the amount of $32,215.25, the cost of Ford's medical bills.[38] The judge concluded in her July 23, 2012, findings of fact and conclusions of law, based on the evidence presented by Sekic and Ford, that Sekic was negligent in causing Ford's injuries.[39] Ford subsequently appealed, arguing that the judgment should also reflect non-economic damages.[40]

The court of appeals, presented with Sekic's assault of Ford for a second time, this time in the civil context, agreed that Ford was entitled to non-economic damages, and reversed the judgment.[39] It remanded the case to determine damages relating to pain and suffering.[40]

---

[36] ECF # 16 at 2-3.

[37] ECF # 17-5, at 1.

[38] *Ford v. Sekic*, No. 98835, 2013 WL 1932789, *3 (Ohio Ct. App. May 9, 2013).

[39] *Id.*

[40] ECF # 1 at 3.

[39] *Id.*

[40] *Id.*; *Ford*, 2013 WL 1932789, at *3.

On July 8, 2014, Sekic consented to judgment for the initial amount as well as $50,000 in non-economic damages.[41] In doing so Sekic stated that he "assign[ed] any and all rights and claims he may have against The Standard Fire Insurance Company, to Plaintiff Chris Ford."[42]

## C. Relevant portions of Sekic's policy

Sekic's policy from Standard affirms coverage for "damages because of bodily injury ... caused by an occurrence to which this coverage applies ... [including paying up to Standard's] limit of liability for the damages for which the insured is legally liable ... [and providing a legal] defense."[43]

There is an explicit exclusion, however, for bodily injury "which is expected or intended by any insured ... [even if it is] of a different kind, quality or degree ... [or is] sustained by a different person ... than initially expected or intended."[44] Exempted from this exclusion though is "bodily injury resulting from the use of reasonable force by an insured to protect persons."[45]

---

[41] ECF # 1 at 3, 57 (Ford states that judgment was entered against Sekic on June 10, 2014, but has not included that document. He states that the judgment entry has "the same binding legal effect.").

[42] *Id.* at 57.

[43] ECF 16-2, at 16.

[44] *Id.*, at 26.

[45] *Id.*

Sekic's policy also features the "Value Added Package – Plus" modification that, among other things, provides an additional restriction denying coverage, specifically, for any personal injury "[w]hich is caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any insured."[46]

The policy also contains a condition imposing a duty on Sekic to "give written notice to [Standard] as soon as is practical" of any accident or occurrence subject to the policy as well as "[p]romptly forward ... every notice, demand, summons or other process."[47]

**D.      The present action**

Ford filed the present action against Standard on August 26, 2014, to recover the damages from his judgment against Sekic from Standard.[48] That action was removed to federal court and is now before me.

## Analysis

**A.      Summary judgment for Standard is appropriate.**

I begin with three preliminary observations that could have been problematic but that can be disposed without being fully addressed; I can properly grant Standard's motion before thoroughly considering each.

---

[46] *Id.*, at 35.

[47] *Id.*, at 19.

[48] *Id.*, at 1.

First, in Ford's supplemental complaint, he states that this present action is brought "pursuant to Ohio law including, *but not limited to* R.C. 3929.06 and Chapter 2721 of the Ohio Revised Code."[49] While I recognize that Ford is merely trying to prevent foreclosure of some unconsidered but potentially viable claim, he does so at the potential expense of the proper notice he owes Standard under the *Iqbal-Twombly* line of cases.

Second, it is no trivial inquiry as to whether Sekic's purported assignment of his interest in the policy to Ford is *actually* valid. As I read the terms of the policy, no valid assignment actually occurred. In fact, there is an express provision prohibiting Sekic's assignment to Ford. That provision states: "Assignment of this policy shall not be valid unless [Standard] give[s] [its] written consent."[50] Ford has provided no such documentation.

Third, assuming for the moment that Ford's injuries are properly covered under the policy, there is nothing in the record showing that Sekic complied with the condition that he promptly notify Standard of the incident and provide them the documents related to it.

As I stated above, none of these observations are an impediment to my properly granting Standard's motion for summary judgment. Clearly Standard has no liability in this matter.

---

[49] ECF # 1 at 2, 4 (emphasis added).

[50] ECF # 1 at 33.

### *1.    Ohio Revised Code § 3929.06 does not apply.*

Ohio Revised Code § 3929.06 provides a mechanism for a plaintiff to seek damages from an insurance company whose insured has injured the plaintiff only if that injury is in a manner contemplated by the insurance policy.[51] Specifically, the statute provides:

> If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury ... and if, at that time that cause of action accrued against the judgment debtor, the judgment debtor was *insured against liability for that injury* ... the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor.[52]

This statute only applies to actions contemplated by an insured's policy. It does not extend to actions outside of that scope. "It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy."[53]

The record in this case is clear. Standard denied Sekic coverage for Ford's injury.[54] It did so after it was notified about the incident and made a finding that Sekic's actions were not covered conduct.[55] Standard based this denial on Sekic's underlying criminal conviction

---

[51] Ohio Rev. Code § 3929.06(A)(1).

[52] *Id.* (emphasis added).

[53] *Gearing v. Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 36, 665 N.E.2d 1115, 1117 (1996).

[54] ECF # 16-5, at 3.

[55] *Id.*

– (1) Sekic was tried and convicted for felonious assault, an intentional act;[56] and (2) Ford's alleged damages were the result of Sekic's violation of a criminal law.[57]

Ohio courts have been clear about criminal assault convictions and an insurer's duty to defend or indemnify in the subsequent civil actions.[58] They have roundly rejected the notion that an insurer necessarily owes coverage to an insured convicted of a crime with "knowingly" as an the intent element.[59] "In fact, all Ohio courts which have specifically addressed the issue have held that a criminal conviction, in and of itself, can establish intent for the purposes of applying an intentional-acts exclusion when the insurance company moves for summary judgment on that issue."[60]

If the underlying injury was intended or expected, an insurer may rightfully deny coverage under an exclusion for intentional or expected injuries.[61] Such intent may properly

---

[56] *Id.*

[57] *Id.*

[58] *See, e.g., Preferred Risk Ins. Co. v. Gill*, 30 Ohio St. 3d 108, 113, 507 N.E.2d 1118, 1123 (1987) ("Courts should not be expected to feign ignorance of a criminal conviction which clearly takes the conduct outside coverage.").

[59] *State Farm Fire and Cas. Co. v. Harpster*, No. 90012, 2008 WL 2612617, *5 (Ohio Ct. App. July 3, 2008) (concluding that affidavits submitted in civil proceeding recanting guilty plea and stating that injury was unintentional was insufficient to establish coverage); *see also*, *Baker v. White*, No. CA2002-08-065, 2003 WL 1689609, *2 (Ohio Ct. App. Mar. 31, 2003) (holding that conviction for felonious assault established sufficient intent under policy's intentional acts exclusion).

[60] *Harpster*, 2008 WL 2612617, at *5.

[61] *Physicians Ins. Co. of Ohio v. Swanson*, 58 Ohio St. 3d 189, 194, 569 N.E.2d 906, 911 (1991).

be inferred from the very nature of certain acts.[62] "Although aggravated assault, requires an element of knowledge rather than intent, one who knowingly commits aggravated assault does so with a reasonable expectation that he will injure someone. In fact, an element of the crime is causing serious physical harm to another.... The crime and the injury are inseparable."[63]

"The mere insinuation of negligence in [a] civil complaint cannot transform what are essentially intentional torts into something 'accidental' that might be covered by insurance."[59] Simply stated, liability insurance is not a shield against liability for intentional and criminal conduct.[60]

Sekic's assault cannot be properly considered the type of behavior covered by his policy. Accordingly, Ohio Revised Code § 3929.06 simply does not apply.

**2.      Standard did not fail to act in good faith.**

Standard's denial of coverage does not constitute a failure to act in good faith. Sekic's criminal conviction, by the terms of the policy itself, constitutes a clearly stated exclusion. As such, Ford's injuries were not "caused by an occurrence to which [the] coverage applied," and, therefore, Standard simply had no obligation to provide Sekic any defense or indemnity.

---

[62] *Harpster*, 2008 WL 2612617, at *5.

[63] *Id.*, at *6 (internal quotation omitted). While true that Sekic was convicted of felonious assault and not aggravated assault, this distinction is immaterial as both require the same mens rea of "knowingly."

[59] *Id.*

[60] *Gearing*, 76 Ohio St. 3d at 39, 665 N.E.2d at 1119.

It is not surprising that Sekic never filed a claim with Standard, informed it about the assault or the civil case, or disputed Standard's coverage denial.

It may be true that as part of the Sekic-Ford consent judgment, Sekic assigned Ford all of his of rights as to Standard. But at the time of that purported assignment, as to the altercation, no rights existed. Standard denied the claim years earlier on February 28, 2012.

As such, at the time of the alleged assignment, Sekic simply did not have "any rights and claims ... against The Standard Fire Insurance Company."[61] Even assuming that there was an effective assignment to Ford, it was meaningless. One hundred percent of nothing is still nothing.

## Conclusion

Accordingly, and for the foregoing reasons, I find that Ohio Revised Code § 3929.06 does not apply to this case. I also find that Standard did not fail to act in good faith in either its initial denial of coverage for Sekic or its subsequent refusal to pay Ford's damages. Standard's motion for summary judgment is granted, and Ford's motion is denied.

IT IS SO ORDERED.

Dated: April 30, 2015          s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[61] *See*, ECF # 1 at 57.